ORIGINAL



1   David N. Lake, Esq., State Bar No. 180775
    **LAW OFFICES OF DAVID N. LAKE,**
2     **A Professional Corporation**
    16130 Ventura Boulevard, Suite 650
3   Encino, California 91436
    Telephone: (818) 788-5100
4   Facsimile: (818) 788-5199
    david@lakelawpc.com
5
6   Attorneys for Plaintiffs
7
8                    **UNITED STATES DISTRICT COURT**
9                  **NORTHERN DISTRICT OF CALIFORNIA**
10
11  ERIC MARKOWITZ, FRANK            Case No. **C10-00430** JF
    BLUMENTHAL, LAUREN REESE
12  and BILLY STERN, on behalf of    **CLASS ACTION COMPLAINT
    themselves and all others similarly   FOR:**
13  situated,
14                                   1) **VIOLATION OF THE
               Plaintiffs,             ELECTRONIC DATA
15                                      PRIVACY ACT;**
         v.                          2) **VIOLATION OF THE
16                                      STATUTORY RIGHT OF
    FACEBOOK, INC., a Delaware          PUBLICITY;**
17  corporation,                     3) **VIOLATION OF
                                        CALIFORNIA BUS. & PROF.
18             Defendant.               CODE SECTION 17200** *et seq.***;**
19                                   4) **COMMON LAW TORT OF
                                        APPROPRIATION;**
20                                   5) **UNJUST ENRICHMENT;**
                                     6) **VIOLATION OF
21                                      CALIFORNIA PENAL CODE
                                        § 502; AND**
22                                   7) **INJUNCTIVE RELIEF**
23                                   **CLASS ACTION**
24                                   **JURY TRIAL DEMANDED**
25
26
27
28

                          Class Action Complaint

1    Plaintiffs ERIC MARKOWITZ, FRANK BLUMENTHAL, LAUREN
2  REESE and BILLY STERN, ("Plaintiffs"), individually and on behalf of all others
3  similarly situated, allege by and through their attorneys, upon information and belief
4  (except as to matters personal to Plaintiffs) as follows:

5

6                              **NATURE OF ACTION**

7    1.    This is a class action against defendant Facebook, Inc. ("Facebook").
8  In recent months, Facebook has violated the privacy rights of the members of the
9  Facebook.com website, misappropriated their personal information, and converted
10 that information for commercial use by means of materially deceptive conduct, as
11 alleged in detail below.

12   2.    The violations that form the basis of this Complaint are serious.
13 Internet users place a high value on the safety and security of their personal
14 information.  This is quite rational: users whose personal information becomes
15 readily available to the public face a number of dangers, not the least of which are
16 identity theft, harassment, and embarrassment.  Federal law enforcement agencies,
17 such as the FBI and the U.S. Postal Inspection Service, have warned that
18 international crime syndicates scour the Internet for personal information which they
19 can use to dupe U.S. citizens into turning over even more personal information,
20 which is then used for purposes of theft and impersonation.   Through the
21 wrongdoing described herein, Facebook has made the "job" of such malefactors
22 considerably easier.

23   3.    Because of the nature of Facebook, it is particularly important that its
24 users ("Users") be provided with a high level of security with regard to their
25 personal information. Facebook is one of a number of popular websites known as
26 "social networks." Typical Users create "Facebook pages" which often contain their
27 real names; home towns; educational history; present work information; photos of
28 themselves, family, and friends; causes they support.  (Users often create "cause"

Jan 29 2010 9:52    LA⬤ LAW PC          81878⬤199          p.2

1  pages, and encourage other members to "join"); and lists of Facebook members who

2  the User has designated as "friends" (a "Friend List").

3      4.      Until recently, Facebook has taken heed of Users' need for privacy, and

4  has provided simple "one-click" methods by which they could keep all or almost all

5  of their information private and away from persons who might cause them harm.

6      5.      In November 2009, however, Facebook suddenly reversed course.

7  Under the guise of giving Users greater control over their personal information,

8  Facebook adopted a new privacy settings system which has been described by

9  Internet experts, academics, and privacy organizations as leading unwary Users into

10  inadvertently revealing large amounts of information about themselves, placing their

11  personal safety and financial security at risk.  The new settings are confusing and

12  materially deceptive, and a firestorm of criticism has erupted over these so-called

13  privacy "enhancements."  The Electronic Frontier Foundation termed Facebook's

14  statements as to how much privacy its users could now obtain using the revised

15  settings "at best confusing and at worst simply untrue . . . ."  Internet expert Jason

16  Calacanis stated even more bluntly on December 13, 2009 that Facebook's actions

17  were "highly unethical" and "deceitful" and opined that:

18      Facebook is trying to dupe hundreds of millions of users they've spent
19      years attracting into exposing their data for Facebook's personal gain:
        pageviews. Yes, Facebook is tricking us into exposing all our items so
20      that those personal items get indexed in search engines–including
21      Facebook's–in order to drive more traffic to Facebook.

22      6.      Calacanis concluded by stating:

23      I've been a member of every social network since Six Degrees and
24      Ryze, almost a decade before Facebook became available to the
        public, and I was confused by their settings page. An average user,
25      certainly, has no idea what is going on by these changes.

26      7.      On December 17, 2009, Facebook's actions led the Electronic Privacy

27  Information Center ("EPIC") to file a formal complaint with the Federal Trade

28

01/29/2010 09:24        No.: R036                    P.002/004

1   Commission (the "FTC"). EPIC alleged that Facebook's revised privacy settings
2   result in the disclosure of personal information that was originally kept private.
3   "These changes violate user expectations, diminish user privacy, and contradict
4   Facebook's own representations," rendering them unfair and deceptive trade
5   practices.

6       8.    The common law has long recognized invasions of privacy as tortious
7   because of the clear harm they can cause. These common law prohibitions have
8   been codified by the California legislature and the U.S. Congress. Steep penalties
9   attach to violations of these laws, and rightly so, as reckless disclosure of others'
10  personal and private information imperils their personal and financial security.

11      9.    For the foregoing reasons, Plaintiffs, on behalf of themselves and all
12  Users in the United States, seek a declaration that Facebook's actions are unlawful
13  and materially deceptive and further seek a ruling (by jury verdict or by the Court)
14  that Class members are entitled to both monetary and injunctive relief.

15

16                      **JURISDICTION AND VENUE**

17      10.   This Court has jurisdiction over this action pursuant to 28 U.S.C.
18  §1332(d) in that Plaintiffs and Defendant are citizens of different states and the
19  aggregate value of the claims asserted herein exceeds $5 million. This Court also
20  has jurisdiction over this action under 28 U.S.C. § 1331, insofar as the claims are
21  asserted herein under the Electronic Communications Privacy Act, 18 U.S.C. § 2701
22  *et seq.* This Court has ancillary jurisdiction over the related state law claims
23  pursuant to 28 U.S.C. §1367.

24      11.   Venue is proper in this District because a substantial portion of the
25  transactions and wrongs complained of herein occurred in this District. Moreover,
26  Defendant's principal place of business is located in this District and Defendant
27  engaged in numerous activities herein, which give rise to the causes of actions
28

1  asserted in this Complaint.  In addition, Defendant has provided in its Terms of Use

2  that all subscribers bringing any actions they may have must do so in federal or state

3  court in Santa Clara County, California, and that all disputes are governed by

4  California law.

5

6  **PARTIES**

7       12.   (a)   Plaintiff Eric Markowitz is a resident of Pennsylvania and a

8  registered user of Facebook.com.

9             (b)   Plaintiff Frank Blumenthal is a resident of Pennsylvania and a

10  registered user of Facebook.com.

11            (c)   Plaintiff Lauren Reese Frank Blumenthal is a resident of

12  California and a registered user of Facebook.com.

13            (d)   Plaintiff Billy Sternberg is a resident of New Jersey and a

14  registered user of Facebook.com.

15       13.   Defendant is a Delaware corporation with its principal place of

16  business at 156 University Avenue, Palo Alto, California 94301.

17

18  **FACTUAL ALLEGATIONS**

19  **A.    Facebook Adopts a Materially Deceptive and**
20  **Misleading Set of "Privacy Controls"**

21       14.   Facebook is the largest social networking site in the world.  Facebook

22  is estimated to have over 350 million individual worldwide subscribers, and annual

23  revenues of $500 million per year.  The company claims to have more than 100

24  million U.S. citizens on Facebook.

25       15.   Facebook allows members to communicate and share information with

26  friends, family, coworkers, classmates, and other people who share similar interests,

27  or who are interested in exploring the interests and activities of others.   The

28  company requires Users to register to use these services.   Registration requires

1  providing a name, gender, date of birth and a valid e-mail address. After providing

2  this information, registered Users can create personal profiles, and post messages,

3  photos, and videos. To create profiles, they are prompted to provide the names of

4  their high schools, colleges, and employers. They can expand their profiles by

5  adding information about various interests and hobbies. They may also send e-mail

6  type messages to other Users on the site. Users can also add friends and send them

7  messages, and update their profiles to notify friends about their activities,

8  whereabouts or musings. Additionally, Users can join networks organized by city,

9  workplace, school, and region.

10     16.    Signing up for Facebook is a pecuniary transaction in that Users

11  exchange their property (*i.e.*, certain personal information) for unfettered use of the

12  Facebook website and services. Facebook then monetizes this personal information

13  through the sale of targeted advertising by well-known merchants and others. These

14  advertisements appear on the Users' "home page" or on a page that contains items

15  posted by their friends known as the "news feed" page. Financial academics have

16  recognized that: "[r]egardless of use, personal information of users has a great value

17  on the Web today." Plaintiffs have no complaint as to the limited commercial use of

18  their personal information by Facebook in this manner (the "Expected Commercial

19  Use"). Plaintiffs have serious complaint with the deceptive actions Facebook has

20  recently taken, without full and complete disclosure and effective prior

21  authorization, to allow almost everyone access to Users' personal information,

22  including hackers, scammers, criminals, sociopaths and the like. Facebook's claim

23  was that the new privacy settings were designed to empower Users with greater

24  control over their personal information, when the truth is anything but.

25     17.    Indeed, the market and financial incentives for Facebook to collect,

26  harvest, mine and process its members' personal information are extremely high.

27  Facebook generates revenue primarily through various types of advertisements

28  which are targeted to Users based on their profiles and information. In fact, the data

1 collected from its members is the key commercial asset Facebook employs to sell
2 advertising and drive traffic to the Facebook website.

3       18.    Facebook was once known for protecting privacy to the point of
4 exclusivity. Indeed, its original privacy policy acknowledged that Users "may not
5 want everyone in the world to have the information you share on Facebook."

6       19.    On February 4, 2009, however, Facebook revised its Terms of Service,
7 asserting broad, permanent, and retroactive rights to Users' information, even as to
8 Users who deleted their Facebook accounts. The Company stated it could make
9 public a User's "name, likeness and image for any purpose, including commercial or
10 advertising."

11      20.    Users objected to these revisions and Facebook reversed them on the
12 eve of an EPIC complaint to the Federal Trade Commission.

13      21.    Facebook again revised its privacy policy on or about April 24, 2009,
14 November 19, 2009, and December 9, 2009. These last two revisions are the subject
15 of this Complaint.

16      22.    Facebook has repeatedly given Users the impression that it values and
17 upholds User privacy. In June 2009, Facebook's Chief Privacy Officer, Chris Kelly,
18 represented that Users "may not want everyone in the world to have the information
19 you share on Facebook," and that Users "have extensive and precise controls
20 available to choose who sees what among their network and friends, as well as tools
21 that give them the choice to make a limited set of information available to search
22 engines and other outside entities."

23      23.    He also stated that Facebook gives "users controls over how they share
24 their personal information that model real world information sharing and provide
25 them transparency about how we use their information in advertising." Kelly
26 further stated, "many of our users choose to limit what profile information is
27 available to non-friends. Users have extensive and precise controls available to
28 choose who sees what among their networks and friends, as well as tools that give

them the choice to make a limited set of information available to search engines and other outside entities."

24.    In its "Statement of Rights and Responsibilities" under "Privacy Policy," Facebook represents that:

> Your privacy is very important to us. We designed our Privacy Policy to make important disclosures about how you can use Facebook to share with others and how we collect and can use your content and information. We encourage you to read the Privacy Policy, and to use it to help make informed decisions.

Further, under "Sharing Your Content and Information," the website states:

> You own all of the content and information you post on Facebook, and you can control how it is shared through your privacy and application settings.

25.    Despite holding itself out as valuing User privacy, the Company makes public and/or disseminates personal User information to third parties for commercial purposes or economic benefit.

26.    Prior to the most recent November and December 2009 revisions, the only categories of personal information publicly available were (i) a User's name and (ii) networks the User belonged to. A User had the option of including additional information in his or her public search listing, including (i) the User's profile pictures; (ii) a Friend List; (iii) a link to add the User as a friend; (iv) a link to send the User a message; and (v) pages the User is a fan of.

27.    In connection with the most recent revisions, Facebook sent Users an "Important Message from Facebook" that represented that Facebook was increasing privacy controls. The message began, "[w]e're making some changes to give you more control of your information" and "added the ability to set privacy on everything you share," as the image below illustrates:

///

**Important message from Facebook**

**Privacy Announcement**

We're making some changes to give you more control of your information and help you stay connected. We've simplified the Privacy page and added the ability to set privacy on everything you share, from status updates to photos.

At the same time, we're helping everyone find and connect with each other by keeping some information—like your name and profile picture—publicly available.

The next step will guide you through choosing your privacy settings. You can learn more about how privacy works here.

Use the lock to share with Friends, Friends of Friends, or Everyone on the Internet, which gives you more control than your old regional network setting.

28.    This message was materially misleading, confusing, and disingenuous. In fact, changes to the privacy settings that Facebook implemented and represented to *increase* User privacy had the outright opposite effect of resulting in the public dissemination of personal information that was originally private. The Company now makes the following categories of personal data "publicly available information": (i) Users' names; (ii) profile photos; (iii) Friend Lists; (iv) pages Users are fans of, including controversial political causes, organizations, individuals, and products they support; (v) their genders; (vi) their geographic regions; and (vii) networks they belong to.

29.    Further, Facebook sets the default privacy setting for certain types of information Users post on Facebook to "everyone."

30.    Facebook allows "publicly available information" to "everyone" to be: "accessed by everyone on the Internet (including people not logged into Facebook);" made subject to "indexing by third party search engines;" "associated with you outside of Facebook (such as when you visit other sites on the internet);" and "imported and exported by us and others without privacy limitations."

31.    As the *New York Times* has observed, "[u]nfortunately, most Facebook users likely opted for the recommended settings without really understanding what

1  they were agreeing to. If you did so, you may now be surprised to find that you
2  inadvertently gave Facebook the right to publicize your private information
3  including status updates, photos, and shared links." Indeed, Facebook now even
4  "pre-clicks" certain options which diminish privacy, a method known in the Internet
5  and marketing industries as a "negative option," and a practice proven to be
6  deceptive, confusing and misleading.

7      32.  Not only do the revised privacy settings result in the disclosure of the
8  aforementioned personal information, impacting privacy directly, but the revelation
9  of this data has other devastating privacy implications. Based on Users' Friend
10 Lists, MIT researchers discovered that, "just by looking at a person's online friends,
11 they could predict whether the person was gay." Some criminal impersonators use
12 Friend Lists to contact a User's friends seeking funds needed to help in a concocted
13 emergency situation.

14     33.  Facebook claims that its revised privacy policy still enables users to
15 "opt-out" of the Facebook Platform and Facebook Connect altogether through the
16 company's privacy settings.

17     34.  The tools provided by Facebook to its Users are materially misleading
18 and very difficult for them to use. There are at least 29 different privacy and
19 security settings spread over numerous web pages. (Additionally, applications
20 which use data obtained from Facebook each have their own privacy settings.) In
21 addition, there are several additional web pages devoted to a discussion of privacy
22 issues, including a long and detailed Privacy Policy. None of the foregoing is
23 designed to explain how a User can best protect his information and data. Rather,
24 the default privacy settings are all set at the minimum level of protection. As a
25 result, the privacy setting procedures are grossly ineffective and Users are misled
26 into allowing Facebook to having their personal information easily accessed for
27 commercial use, exposing them to identity theft, harassment, embarrassment,
28 intrusion, and all types of cybercrime.

**1**  **B.**    **Facebook Inappropriately Reveals Excessive Personal User Information**
**2**       **to Third-Party Application Developers and Websites**

**3**     35.   As part of the November 2009 revisions to the privacy policy,
**4** Facebook caused the Users' privacy settings to default to the settings which
**5** permitted their private information to be fully available to third-party applications
**6** and to data miners on the internet, such as Google.com. In so doing, Facebook
**7** misleadingly told Users in its revised privacy policy that as a User, "you can control
**8** how you share information with [ ] third-party applications and websites through
**9** your application settings." The control mechanisms provided, however are
**10** materially deceptive, confusing, and ineffective. Indeed, the new privacy settings
**11** permit third-party application developers and websites to access more information
**12** than Facebook previously authorized.

**13**     36.   According to Facebook:

**14**       Examples of the types of information that applications and websites
**15**       may have access to include the following information, to the extent
        visible on Facebook: your name, your profile picture, your gender,
**16**       your birthday, your hometown location (city/state/country), your
**17**       current location (city/state/country), your political view, your
        activities, your interests, your musical preferences, television shows in
**18**       which you are interested, movies in which you are interested, books in
**19**       which you are interested, your favorite quotes, your relationship status,
        your dating interests, your relationship interests, your network
**20**       affiliations, your education history, your work history, your course
**21**       information, copies of photos in your photo albums, metadata
        associated with your photo albums (e.g., time of upload, album name,
**22**       comments on your photos, etc.), the total number of messages sent
**23**       and/or received by you, the total number of unread messages in your
        in-box, the total number of "pokes" you have sent and/or received, the
**24**       total number of wall posts on your Wall, a list of user IDs mapped to
**25**       your friends, your social timeline, notifications that you have received
        from other applications, and events associated with your profile.
**26**

**27**     37.   In the limited circumstances in which Users have the option of
**28** withholding information from third-party application developers, the new privacy

1    policy makes doing so far more confusing and cumbersome.

2        38.    Third-party application developers create applications and games on

3    Facebook for Users to utilize. They access "profile, friend, page, group, photo, and

4    event data," through the Facebook Application Programming Interface (the "API").

5    The API is a detailed group of commands and interfaces which permit an

6    application to run on Facebook.

7        39.    The original privacy settings contained a universal one-click option to

8    prevent the disclosure of personal information through the Facebook API systems,

9    as the image below indicates:

10        o  Do not share any information about me through the

11                        Facebook API

12        40.    Under the revised settings, Facebook has eliminated the one-click

13    option and substituted it with the setting demonstrated below:

14    **Applications and Websites**

15

16    **What your friends can share about you through applications and websites**

17    When your friend visits a Facebook-enhanced application or website, they may want to share certain
      information to make the experience more social. For example, a greeting card application may use your
      birthday information to prompt your friend to send a card.

18    If your friend uses an application that you do not use, you can control what types of information the
      application can access. Please note that applications will always be able to access your publicly available
      information (Name, Profile Picture, Gender, Current City, Networks, Friend List, and Pages) and
19    information that is visible to Everyone.

20                        Personal info (activities, interests, etc.)
                          Status updates
21                        Online presence
                          Website
22                        Family and relationship
                          Education and work
23                        My videos
                          My links
24                        My notes
                          My photos
25                        Photos and videos of me
                          About me
26                        My birthday
                          My hometown
27                        My religious and political views

28                        Save Changes

-12-
Class Action Complaint

1    41.    The revised setting states that "applications will always be able to
2  access [User] publicly available information (Name, Profile Picture, Gender,
3  Current City, Networks, Friend List, and Pages) and information that is available to
4  Everyone," making publicly available information mandatorily accessible to third
5  parties. A User merely has the option to safeguard other personal information by
6  unchecking their respective boxes.

7    42.    Thus, the new "security setting" mandates that the Facebook Platform
8  share Facebook Users' personal information with application developers without
9  their knowledge or consent, and the Users have no way to countermand this change.

10    43.    Thus, currently, Facebook does not present the User the realistic option
11  to restrict third party access to all User information through the Facebook Platform.

12    44.    Users can block third-party applications from attaining personal
13  information through privacy controls which are deceptive and confusing, and which
14  result in Users unwittingly maximizing the unintentional public disclosure of
15  personal information. These controls require Users to search the Application
16  Directory, visit the application's "about" page, click a small link on that page, and
17  then confirm their decisions. To block the more than 350,000 applications from
18  accessing their information, Users would have to perform these steps for every
19  single application. (Even assuming a User has only 20 applications, locating and
20  correctly setting the myriad privacy settings of each such application is daunting.)

21    45.    A great majority of the time, Facebook provides third-party application
22  developers with more information than their respective applications require.
23  According to a 2007 University of Virginia study of Facebook applications, "90.7%
24  of applications are being given more privileges than they need."

25    46.    Contrary to the ideals it represents in its privacy policy, Facebook has
26  been implementing policies that decrease user privacy and continues to do so. On
27  January 20, 2010, it launched a program making the e-mail addresses of Users more
28  accessible to third-party developers, personal information Facebook requires Users

1  to provide but that is not necessarily available to others.

2  **C.   Opposition to Facebook's Misleading Privacy Changes**

3      47.    Many Facebook Users have voiced opposition to the company's

4  Privacy Policy alterations. One Facebook group, entitled "Petition: Facebook, stop

5  invading my privacy!", states on its home page:

6      On December 9, 2009 Facebook once again breached our privacy by
       imposing new 'privacy settings' on 365+ million users. These settings
7      notably give us LESS privacy than we had before, so I ask, how
8      exactly do they make us more secure? . . . Perhaps the most frustrating
       and troublesome part is the changes Facebook made on our behalf
9      without truly making us aware or even asking us.

10

11     48.    Additionally, *New York Times* technology writer Brad Stone invited

12  readers to comment on their interpretations of the changes. He received more than

13  50 responses, most of which expressed concern, confusion, or anger. One User

14  complained:

15      I find the changes to be the exact opposite of what Facebook claims
       them to be. Things that were once private for me, and for carefully
16      selected Facebook friends, are now open to everyone on the Internet.
       This is simply not what I signed up for. These are not the privacy
17      settings I agreed to. It is a complete violation of privacy, not the other
18      way around.

19

20     49.    In an article entitled "Facebook's Great Betrayal", Internet magazine

     *Gawker* summed up the degree to which Facebook members have been victimized
21
     by the new privacy practices:
22

23      Its new privacy policy have turned the social network inside out:
       millions of people have signed up because Facebook offers a sense of
24      safety. For the last five years — as long as you're relatively careful
       about who you accept as your friends — what you do and say on
25      Facebook for the most part stays on Facebook. Katie Couric's
26      daughter first posted pictures of her famous mom dancing silly in
       2006, but it took three years for them to leak to us. (Thank you
27      tipsters!)    But virtually overnight and without a clear warning,
28      Facebook has completely reversed those user expectations. Their new

privacy settings amount to making anything you post on Facebook to be public, unless you go to great lengths to keep your info private.

The most insidious part of Facebook's scheme to expose user data has been how the company framed them, claiming to want to enhance privacy. In an open letter to his 350 million+ users, CEO Mark Zuckerberg claimed he believed the old privacy framework was "no longer the best way for you to control your privacy," and that the new system would give people "even more control of their information." It would be "simpler" and finer-grained.

But when the system came out a week later, it actually gave less, not more, control over information. Gone was the ability to hide your friends list, profile pictures, fan pages and network membership from all strangers; Facebook's new, formal privacy policy explicitly made this information public (despite the ability to keep some of it, like the friends list, off your profile page).

\*\*\*

But it's not just that Facebook is tricking its users; it's betraying them. It did so when it literally communalized private friend lists that people spent years accumulating, without which their accounts would be useless. It did so when it mislead them by saying it wanted to enhance their privacy, when the real goal was growth and profit.

## CLASS ACTION ALLEGATIONS

50.    Plaintiffs bring this action pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated. Plaintiffs seek to represent a Class consisting of all persons in the United States who presently have Facebook accounts.

51.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment thereto. Specifically excluded from the Class are the officers, directors, agents, trustees, parents, children, corporations, trusts, representatives,

1  employees principals, servants, partners, joint ventures or entities controlled by
2  Defendant and their heirs, successors, assigns or other persons or entities related to
3  or affiliated with Defendants and/or their offices and/or directors, or any of them;
4  the Judge assigned to this action and any member of the Judge's immediate family.

5      52.   **Numerosity - Fed.R.Civ.P. 23(a)(1)**-  Members of the Class are so
6  numerous that their individual joinder is impracticable.  Plaintiffs are informed and
7  believe that the proposed Class should contain millions of members.  The precise
8  number of Class members is unknown to Plaintiffs.  The number of Class members
9  is known to Defendant.

10     53.   **Existence and Predominance of Common Questions of Fact and**
11 **Law - Fed.R.Civ.P. 23(a)(2), 23(b)(3)**- There are questions of law and fact of
12 general interest to the Class.  The common questions include, but are not limited to,
13 the following:

14          a.    Whether Facebook has exceeded its authorized access to Users'
15 personal information and thereby improperly obtained that information in violation
16 of the provisions of the Electronic Data Privacy Act;

17          b.    Whether Facebook has improperly invaded Users' privacy by
18 misappropriating or converting their names or likenesses in violation of California
19 Civil Code §3344;

20          c.    Whether Facebook has violated California Bus. & Prof. Code
21 §17200 *et seq.*;

22          d.    Whether Facebook has violated California Penal Code § 502;

23          e.    Whether Facebook has committed the common law tort of
24 wrongful misappropriation;

25          f.    Whether Defendant has been unjustly enriched as a result of the
26 conduct described herein;

27          g.    Whether the Plaintiffs and Class are entitled to declaratory and
28 injunctive relief; and

h.    Whether Defendant's conduct caused damages to Plaintiffs and members of the Class and the measure of such damages.

54.    The defenses of Defendant, to the extent that any such defenses apply, are applicable generally to Plaintiffs and the entire Class and are not distinguishable as to proposed Class members.

55.    **Typicality - Fed.R.Civ.P. 23(a)(3)**- Plaintiffs' claims are typical of the claims of the Class as a whole which has sustained and/or will sustain damages as a proximate or legal result of the common course of conduct of Defendant. Plaintiffs' claims are typical of the Class because Defendant subjected all Class members to the same course of conduct.

56.    **Adequacy - Fed.R.Civ.P. 23(a)(4)**-    Plaintiffs will fairly and adequately protect the interests of the Class and have no interest which is antagonistic to those of the Class. Plaintiffs have retained counsel that are highly experienced in the prosecution of complex consumer class action litigation.

57.    **Superiority - Fed.R.Civ.P. 23(b)(3)**- A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small, given the burden and expense of individual persecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not.

58.    Individualized litigation presents a potential for inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation increases the delay and expense to all parties and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication economy of scale and comprehensive supervision by a single court.

59.   In the alternative, the Class may be certified under Rule 23(b)(1) and/or (b)(2) because:

a.   The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would create incompatible standards of conduct for Defendants.

b.   The prosecution of separate actions by individual Class members would create a risk of adjudication with respect to them that would as a practical matter be dispositive of the interests of other Class members not parties to the adjudication or substantially impair or impede their ability to protect their interests; and/or

c.   Defendants have acted or refused to act on the grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the class as a whole.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF THE ELECTRONIC DATA PRIVACY ACT

60.   Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 59, inclusive, and incorporate them as though fully set forth herein.

61.   Defendant has violated the Electronic Data Privacy Act (the "EDPA").

62.   Defendant operates an "electronic communications service", as defined in 18 U.S.C. §2510(15). Facebook provides to Users the ability to send or receive electronic communications to any of Facebook's millions of members.

63.   Pursuant to the EDPA, electronic storage includes any storage of communications by an electronic communication service for purposes of backup protection of such communication. The Facebook website serves as backup both for Users and Facebook of all communications, internal e-mails, and postings.

64.   Pursuant to 18 U.S.C. § 2701(a), whoever intentionally exceeds an authorization to access that facility and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system, has violated the EDPA.   Defendant has violated this provision of the EDPA.

65.   Additionally, pursuant to 18 U.S.C. § 2702(a), a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service.  Defendant has violated this provision as well.

66.   By reason of the foregoing acts, Plaintiffs and the Class are entitled to actual and statutory damages for each violation, as well as attorneys' fees as provided in 18 U.S.C. § 2707-(c).

## SECOND CLAIM FOR RELIEF
## VIOLATION OF THE STATUTORY RIGHT OF PUBLICITY

67.   Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 59, inclusive, and incorporate them as though fully set forth herein.

68.   Under California Civil Code §3344, Defendant is prohibited from knowingly using "another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . ."

69.   Defendant's conduct as described herein constitutes the use of Users' names, photographs, or likenesses without proper prior consent.

70.   By reason of the foregoing, Defendant is liable for actual and statutory damages to Plaintiffs and the Class as provided in California Civil Code §3344(a).

### THIRD CLAIM FOR RELIEF
## VIOLATION OF CALIFORNIA BUS. & PROF. CODE §17200 *et seq.*

71.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 59, inclusive, and incorporate them as though fully set forth herein.

72.    Facebook's actions, which had the effect of inducing Users to unwittingly permit disclosure of sensitive personal information, constituted an unfair, unlawful, and deceptive business practice, in violation of Cal. Bus. & Prof. Code § 17200.

73.    By reason of Defendant's misstatement and omissions, Plaintiffs and all Class members have suffered injury in fact and have lost money or property as a result of the alleged violations.

74.    Plaintiffs and the Class are entitled to restitution of their property, and the value of that property. Such restitution may be made by: (a) a return to the privacy settings in place prior to the improper conduct alleged herein; and/or (b) the disgorgement of ill-gotten gains.

75.    Defendant's actions have caused and will cause Plaintiffs and all Class members to be exposed to threats to their personal and financial security, harms which cannot readily be measured by money damages and for which there is no adequate remedy at law. Accordingly, Plaintiffs and the Class members are entitled to injunctive relief under Cal. Bus. & Prof. Code §§ 17203 and 17204.

### FOURTH CLAIM FOR RELIEF
## COMMON LAW TORT OF APPROPRIATION

76.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 59, inclusive, and incorporate them as though fully set forth herein.

77.    Defendant's actions constitute the common law tort of wrongful appropriation in that such conduct involves: (1) Defendant's use of the Users'

1    identities; (2) the appropriation of Users' names or likenesses to Defendant's
2    advantage, commercially or otherwise; (3) lack of Users' consent; and (4) resulting
3    injury.   For purposes of this Fourth Claim for Relief, Plaintiffs disclaim any
4    allegation that Defendant has acted "knowingly."

5        78.    By reason of the foregoing, Defendant is liable in damages to Plaintiffs
6    and the Class for their actual damages, as may be measured by the value of the
7    property misappropriated to Defendants.

8                         **FIFTH CLAIM FOR RELIEF**
9                          **UNJUST ENRICHMENT**

10       79.    Plaintiffs repeat and re-allege each and every allegation contained in
11   paragraphs 1 through 59, inclusive, and incorporate them as though fully set forth
12   herein.

13       80.    Defendant has benefitted and been enriched by the above alleged
14   conduct.  Defendant has collected fees and generated revenue from the unlawful
15   conduct described herein.

16       81.    Defendant has knowledge of this benefit.

17       82.    Defendant has voluntarily accepted and retained all benefit that it
18   received regarding the acts described herein.

19       83.    The circumstances, as described herein, render it inequitable for
20   Defendant to retain the ill-gotten benefit without paying the value thereof to
21   Plaintiffs and the Class.

22       84.    Plaintiffs and the Class are entitled to the amount of Defendant's ill-
23   gotten gains, including interest, resulting from its unlawful, unjust, unfair and
24   inequitable conduct, as alleged herein.  Plaintiffs and the Class may make claims on
25   a pro rata basis for restitution.

26       85.    Accordingly, Plaintiffs seek the imposition of a constructive trust on
27   those monies by which the Defendant has been unjustly enriched as a result of the
28   unlawful practices described herein.

**SIXTH CLAIM FOR RELIEF**
**VIOLATION OF CALIFORNIA PENAL CODE § 502**

86.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 59, inclusive, and incorporate them as though fully set forth herein.

87.    As a result of the wrongs committed here Defendant has knowingly and without permission caused to be accessed the personal information of Users, within the meaning of California Penal Law § 502(a)(7).

88.    This section provides for a private right of action for anyone who has suffered a violation of this statute and provides for the recovery of compensatory damages as well as the imposition of injunctive relief or other equitable relief, and an award of attorneys' fees.

89.    As a result of the Defendants' conduct, it is liable to Plaintiffs and the Class for violation of § 502.

**SEVENTH CLAIM FOR RELIEF**
**INJUNCTION**

90.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 59, inclusive, and incorporate them as though fully set forth herein.

91.    Absent a reformation of Facebook's business practices, Plaintiffs and the Class will be faced with the bringing of successive actions at law to compensate them for past wrongs. Since successive actions at law for the same conduct are not favored and Cal. Bus. & Prof. Code § 17200 and California Penal Law § 502 specifically authorize the entry of an Injunction, the entry of an Injunction is proper here. Moreover, the Defendant's invasions of privacy and unauthorized release of private information subject Plaintiffs and the Class to types of harm that cannot be fully compensated in a pecuniary fashion.

92.    Defendant knew and knows that the acts and practices complained of

1   herein are materially deceptive and misleading, and pose certain intangible dangers.

2       93.    There is every reason to believe that if the conduct complained of
3   herein is not enjoined, Defendant will continue to mislead Users into disclosing
4   personal information for Facebook's advantage, in violation of statutory and
5   common law.

6       94.    As to Defendant's continuing illegal commercial efforts and especially
7   as to its intangible effects, Plaintiffs and the Class have no adequate remedy at law.

8       95.    Accordingly, a permanent injunction should enter preventing and
9   enjoining Defendant from operating Facebook in such a deceptive and unfair
10  manner, causing the unwanted disclosure of personal information. Plaintiffs request
11  that the Court Order that Facebook, at a minimum, take the following specific
12  actions as the required equitable remedies:

13      a.    The required dissemination of a detailed plain-language notice
14  to Users explaining that prior privacy settings were defaulted to an unreasonably
15  low level; explaining that at these default settings, data miners such as Google.com
16  were able to capture the Users' personal information; and that at the prior default
17  privacy settings, Users' personal information was open to misuse. The Notice
18  should also make Users aware of the new features described in ¶ 95(c) below.

19      b.    Require Facebook to change certain default privacy settings as
20  follows:

21          i.    **Public Search Results** Default to Not Allow;
22          ii.   **Facebook Search Results** Default to Friends;
23          iii.  **Religious and Political Views** Default to Friends;
24          iv.   **Family and Relationship** Default to Friends;
25          v.    **Posts by Me** Default to Friends of Friends;
26          vi.   **Personal Info** Default to Friends of Friends;
27          vii   **Applications and Websites Enabled by a User As to His**
28                **Own Information** Default to the disclosure of Personal

Info and Online presence only; and

viii. **Applications and Websites Enabled by Another As to a User's Information** Default to Not Allowed.

c. Require Facebook to institute privacy and security User Help features as follows:

i. Provide an 800 number, and live chat system where Users can obtain information in English and Spanish about the privacy and security settings in Facebook and obtain meaningful answers to their questions as provided by knowledgeable technical personnel;

ii. Provide an on-site video and make available a PowerPoint presentation which in plain English and Spanish proceeds through all of the privacy and security settings, explaining what they mean and explaining what the minimum settings should be to keep Users safe; and

iii. A complete redraft of the Facebook's Privacy Policy in plain English and Spanish to remove any statements which are not accurate and to explain the Policy in a manner consistent with the above mandated changes.

d. Requiring Facebook to require any software application creators wherein the software is linked to Facebook, to provide that a privacy webpage appear directly after a User signs in to use such application for the first time, explaining the privacy and security features and settings of the application in plain English and Spanish, and providing guidance as to how to select the proper privacy and security settings at levels appropriate so as to properly protect the Users' privacy and security.

96. Cause Facebook to take such other affirmative action as necessary to effect a just resolution of this action as the disclosure of further information would require.

1

## PRAYER

2    **WHEREFORE,** Plaintiffs pray for the following relief:

3        1.    For an Order certifying that this action may be maintained as a class

4    action against Defendant, appointing Plaintiffs and their counsel to represent the

5    Class and directing that reasonable notice of this action be given by the Defendant to

6    the Class;

7        2.    For damages, restitution and disgorgement as to Plaintiffs' statutory

8    and common law causes of action, according to proof, including prejudgment

9    interest as allowed by law;

10       3.    For an injunction as set forth above;

11       4.    For an award of reasonable attorneys' fees to Plaintiffs' counsel,

12   expert's fees, and reimbursement of reasonably incurred expenses; and

13       5.    That Plaintiffs and the Class be entitled to such other and further relief

14   as this Court may deem just and proper.

15

## JURY DEMAND

16       To the full extent available, Plaintiffs demand a trial by jury.

17

18   DATED: January 28, 2010              LAW OFFICES OF DAVID N. LAKE

19

20                                         By: _____

21                                              DAVID N. LAKE
                                                Attorneys for Plaintiffs

22   **Of Counsel:**

23
     Roy L. Jacobs
24   **ROY JACOBS & ASSOCIATES**          Laurence Paskowitz
25   60 East 42nd Street 46th Floor       **PASKOWITZ & ASSOCIATES**
     New York, NY 10165                   60 East 42nd Street 46th Floor
26   212-867-1156                         New York, NY 10165
                                          212-685-0969
27   212-504-8343 (Fax)                   212-685-2306 (Fax)
     Rjacobs@jacobsclasslaw.com           Classattorney@aol.com
28

-25-
Class Action Complaint